UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MIKAELA MARIE STEVENS-HILL et al., | CASE NO. 3:26-cv-05003-DGE |
| Plaintiffs, | ORDER ON MOTION TO DISMISS (DKT. NO. 10) |
| v. | |
| GLAMNETIC LLC, | |
| Defendant. | |

Before the Court is Defendant Glamnetic LLC's motion to dismiss (Dkt. No. 10) Plaintiffs Mikaela Stevens-Hills and Stephine Stewart's complaint (Dkt. No. 1-1).  Having reviewed the parties' submissions, the relevant portions of the record, and the applicable law, the Court DENIES Defendant's motion.

## I    BACKGROUND

### A.  Factual Background

Plaintiffs allege Defendant has violated the Washington Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("WCPA") by "spam[ming]

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 1

Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets." (Dkt. No. 1-1 at 11.)  This false urgency wastes consumers' time by "enticing them to engage with the defendant's marketing efforts for fear of missing out[,]" and also floods consumers' email inboxes "with repeated false notifications that the time to act—*i.e. purchase*—is short." (*Id.*)  Plaintiffs allege Defendant sends "False Limited Time Message[s]" where marketers create pressure to buy immediately "by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." (*Id.* at 14) (internal citation omitted).  Defendant "regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal." (*Id.* at 16.)  The complaint identifies various examples of allegedly false or misleading subject lines where Defendant advertised deals available for a limited time, only for Defendant to extend the deal for another day or sometimes several days. (*Id.* at 16–23, 33–34.)  Plaintiff Stevens-Hill allegedly received two of those emails: a July 24, 2024 email stating, "Last Call For Up to 35% Off [emoji]" and an August 2, 2024 email with the subject line "LAST CALL: 25-50% off Sitewide [emoji]." (*Id.* at 25.)  The complaint alleges that Plaintiff Stewart also received two emails: one dated August 31, 2025 entitled "Sitewide Sale Ends Tomorrow!" and one email dated September 1, 2025 with the subject line "LAST CALL: 40% Off[.]" (*Id.*)

## B. Procedural Background

Plaintiffs initiated this lawsuit in Thurston County Superior Court (Dkt. No. 1-1.)  On January 5, 2026, Defendant removed the case to this Court. (Dkt. No. 1.)  On January 26, 2026, Defendant moved to dismiss Plaintiffs' complaint. (Dkt. No. 10.)  Defendant asserts Plaintiffs' complaint should be dismissed because: (1) CEMA is preempted by the Controlling the Assault

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 2

of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"); (2) CEMA is facially unconstitutional on its face , as its requirement for out-of-state entities to identify individuals currently located or residing in Washington creates a nationwide standard for commercial email, which burdens interstate commerce and, unconstitutional as applied because Plaintiffs fail to allege they were located in Washington when they received the emails at issue; (3) Plaintiffs fail to allege facts supporting several elements of their claim under CEMA; (4) Plaintiffs' CPA claim is premised entirely on their CEMA claim, and both claims fail; and (5) Plaintiffs fail to allege any facts supporting their claims for actual and treble damages under both CEMA and CPA. (*See generally id.*)

Based on the stipulation of the Parties (Dkt. No. 19), the Court granted the State of Washington's motion to intervene in the case on March 2, 2026 (Dkt. No. 20).  The matter is now ripe for review.

## II    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id*. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (internal citation omitted).

### III    DISCUSSION

#### A. CAN-SPAM Preemption

Defendant argues that CAN-SPAM preempts Plaintiffs claim under CEMA. (Dkt. No. 10 at 24–31.) But this Court has already rejected this theory. *See Liss et al. v. Skechers USA Inc.*, Case No. 2:25-cv-05861-DGE, Dkt. No. 42 at 10–13; *Devivo v. Sheex Inc.*, Case No. 2:25-cv-05807-DGE, Dkt. No. 41 at 7. Defendant offers no new argument to persuade the Court to depart from its previous rulings. Thus, the Court rejects Defendant's preemption argument.

#### B. Constitutionality of CEMA

Next, the Court turns to Defendant's constitutional argument. Defendant argues that CEMA is facially unconstitutional because it imposes liability based solely on the email recipient's residency—not location—thereby controlling commerce occurring wholly outside of Washington in violation of the dormant Commerce Clause. (Dkt. No. 10 at 17–18.) Defendant further argues CEMA is unconstitutional as applied to Plaintiffs because Plaintiffs fail to allege they were in Washington when they received the emails at issue. (*Id.* at 18.)

The Court adopts the conclusion of every other judge to address this matter and finds CEMA is not unconstitutional under the dormant Commerce Clause. *See, e.g.*, *Washington v.*

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 4

*Ulta Salon, Cosmetics & Fragrance, Inc.*, 822 F. Supp. 3d 1223, 1232–1233 (E.D. Wash. 2026); *Vernoic Repperger, Amber Lamar, Charra Caldwell, Rebekah Clark v. Ulta Salons, Cosmetics & Fragrance, Inc.*, No. 2:25-cv-00526-RLP, 2026 WL 1157157, at *5 (E.D. Wash. Apr. 28, 2026); *Kempf v. Fullbeauty Brands Operations, LLC*, C25-1141 TSZ, 2026 WL 395677, at *7 (W.D. Wash. Feb. 12, 2026); *see also State v. Heckel*, 24 P.3d 404, 412 (Wash. 2001) (en banc).

It is well-established that "[a]nalysis of a state law under the dormant Commerce Clause generally follows a two-step process." *Heckel*, 24 P.3d at 409. First, a court must "determine whether the state law openly discriminates against interstate commerce in favor of intrastate economic interests." *Id*. In such case, the law will generally be struck down. *Jessica Jackson v. Hanesbrands, Inc.*, No. 2:25-CV-00440-SAB, 2026 WL 116144, at *2 (E.D. Wash. Apr. 27, 2026). Second, if the law is facially neutral, the court must conduct a balancing test weighing "the local benefits against the interstate burdens." *Heckel*, 24 P.3d at 409. More granularly, the dormant Commerce Clause has three "key strands," *Flynt v. Bonta*, 131 F.4th 918, 923 (9th Cir. 2025), which involve (i) a non-discrimination principle, (ii) an "extraterritoriality" principle, and (iii) a burden balancing test under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Defendant addresses only the second and third strands. Nonetheless, the first inquiry, *i.e.*, whether the state law discriminates against interstate commerce, is the starting point for a dormant Commerce Clause analysis. *See Flynt*, 131 F.4th at 926.

## 1. Non-discrimination principle

In *National Pork Producers Council v. Ross*, the Supreme Court observed that the "antidiscrimination principle lies at the 'very core' of our dormant Commerce Clause jurisprudence," and "prohibits the enforcement of state laws 'driven by . . . economic protectionism—that is regulatory measures designed to benefit in-state economic interests by

burdening out-of-state competitors.'" 598 U.S. 356, 369 (2023).  As found in *Kempf*, "CEMA treats Washington-based entities the same as out-of-state businesses," and "[t]he statute's prohibition on e-mails containing false or misleading information in their subject line applies 'evenhandedly' to any 'person.'" 2026 WL 395677, at *5 (quoting *Heckel*, 24 P.3d at 409). Defendant does not suggest anything different.  CEMA does not violate the non-discrimination principle.

2.   Extraterritoriality principle

CEMA regulates commercial emails sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident." Wash. Rev. Code § 19.190.020(1).  Defendant argues that permitting Plaintiffs' claim could create a situation where CEMA "imposes restrictions on a company organized and based in Florida (like Glamnetic) on its transmission of emails to a person in New York (for example) who is nonetheless a Washington resident." (Dkt. No. 10 at 18.)  Accordingly, Defendant contends this violates the dormant Commerce Clause's principle that "states may not directly regulate conduct that takes place wholly outside of their borders." (*Id*. at 17.)

This exact hypothetical has been raised and rejected in other matters.  Contrary to Defendant's attempt to frame it as such, this is not a situation where there is "a law that *directly* regulate[s] out-of-state transactions by those with *no* connection to the State." *Nat'l Pork Producers Council*, 598 U.S. at 376, n.1.  As explained in *Ulta*, Defendant's "hypothetical ignores that CEMA regulates activities targeting Washington residents, who remain Washington residents even if they are temporarily out of state." 822 F. Supp. 3d at 1232.  Defendant's argument also ignores the reality that the national marketplace is interconnected and that most state laws have some "'practical effect of controlling' extraterritorial behavior." *Nat'l Pork*

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 6

*Producers Council*, 598 U.S. at 374.  Accepting Defendant's contention that CEMA improperly imposes restrictions on out-of-state conduct would ultimately "invite endless litigation and inconsistent results" anytime a state law has some effect on out-of-state conduct.  *Id*. at 375. Accordingly, an extraterritorially claim fails.[1]

### 3.  *Pike* balancing test

Defendant's claim under a *Pike* balancing theory is equally unsuccessful.  Defendant argues "Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct." (Dkt. No. 10 at 24.)  This interest compared to the potential burden Defendant may have in being "forced to apply CEMA's restrictions nationwide in order to comply" creates uncertainty, which according to Defendant, is violative of the dormant Commerce Clause.  (*Id.*) However, "increased costs to comply with state regulation alone do not suffice to establish a substantial burden on interstate commerce."  *Ulta*, 822 F. Supp. 3d at 1233.  Moreover, "a plaintiff must first 'demonstrate that a challenged law imposes a "substantial" or "significant" burden on interstate commerce before *Pike* balancing can occur."  *Id*. (quoting *Flynt*, 131 F.4th at 925).  Defendant has not done so.

In short, Defendant's dormant Commerce Clause arguments fail.

---

[1] It is possible that for the reasons articulated in *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (en banc), a matter may violate the dormant Commerce Clause where a plaintiff does in fact have little to no connection to Washington.  But at this stage—and unlike *Sam Francis*—there is no evidence that any wholly out-of-state conduct is being regulated. Moreover, the Ninth Circuit has left open whether *Sam Francis* remains good law, and this Court need not decide it now.  *See Flynt*, 131 F.th at 931.

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 7

**C. Plaintiffs Sufficiently Allege CEMA Violations**

CEMA provides that, "No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident" that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Defendant argues Plaintiffs fail to plead facts showing (1) they actually received all of the emails identified in the complaint, (2) the email subject lines contained false or misleading information, and (3) Defendant knew or had reason to know Plaintiffs were Washington residents.

The Court finds at this stage, Plaintiffs allege sufficient facts to support their CEMA claim, and subsequently their CPA claim, against Defendant. They assert Defendant sends emails to consumers it has reason to know are owned by Washington residents and those emails contain misleading information regarding the urgency of deals in the subject line. (*See* Dkt. No. 1-1 at 23–25.) According to the complaint, Defendant consistently sends emails with subject lines that identify an illusory time limit for a promotion or sale, and Plaintiffs have received at least four of those emails.[2] (*Id.* at 16–23, 25.) These subject lines include phrases like "TODAY ONLY" "LAST CALL" or "FINAL HOURS TO SHOP" to create a false sense of urgency. (*Id.*) And Plaintiffs contend Defendant sends these emails while never intending to terminate the sale by the described deadline. (*See id.*)

---

[2] Defendant argues that Plaintiffs' complaint may only proceed on the emails they alleged to have *actually received*, as opposed to all of the emails discussed in the complaint. (Dkt. No. 10 at 12–13.) However, the number of emails Plaintiffs received from Defendant is a factual question the Court will not address at this stage.

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 8

The complaint also alleges multiple methods by which Defendant could know or have reason to know Plaintiffs are Washington residents: (1) Defendant's "sheer volume of email marketing" puts it on notice that Washington residents would receive its emails; (2) Defendant may obtain location information when consumers make purchases on its website or self-report to Defendant; (3) Defendant may obtain location information by tracking IP addresses to devices used to open emails and correlating them to physical locations; (4) Defendant "likely uses Klaviyo" to manage its email marketing campaign which would allow identification of persons who receive Glamnetic emails and is "likely" able to infer the "general geographic location of recipients by state based on their IP address at the time of email open or link click"; (5) Defendant may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers; (6) Defendant may obtain location information by using "identity resolution services" which can connect email address to physical location; and (7) Defendant may obtain information upon request from the registrant of Internet domain names contained in email addresses.  (*Id.* at 23–24.)  The complaint, viewed in the light most favorable to Plaintiffs, alleges sufficient facts to state a plausible claim under CEMA.  Defendant's arguments for dismissal are inconsistent with the standards applicable to motions brought under Federal Rule of Civil Procedure 12(b)(6), which require the Court to assume the truth of the allegations in the operative pleading and to draw all reasonable inferences in Plaintiffs' favor. *See*, *e.g.*, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Defendant instead

invites the Court to question the truth of the allegations of the complaint and draw inferences *against* Plaintiffs. The Court declines to do so.[3,4]

Finally, Defendant argues that because Plaintiffs fail to allege facts suggesting they sustained actual damages, any claim for actual damages, and subsequently treble damages, should be dismissed. (Dkt. No. 10 at 31.) As Plaintiffs point out, "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Brown v. Old Navy, LLC*, 567 P.3d 38, 45 (Wash. 2025). Because Plaintiffs have alleged sufficient facts to support a CEMA violation, it is premature to dismiss actual or treble damages at this stage.

**IV    CONCLUSION**

Accordingly, for the reasons discussed, Defendant's motion to dismiss is DENIED. (Dkt. No. 10.)

Dated this 17th day of June, 2026.

David G. Estudillo
United States District Judge

---

[3] For example, Defendant asks the Court to consider the "plausible alternative explanation" that Defendant merely "renewed or extended its promotion" in response to "subsequently developed business conditions." (Dkt. No. 10 at 14.) At the motion to dismiss stage, the Court draws all reasonable inferences in favor of the *nonmoving* party—in this case, Plaintiffs.

[4] Defendant argues that because Plaintiffs' CEMA claims fail as a matter of law, their CPA claims, which are grounded in CEMA violations, necessarily fail. (Dkt. No. 10 at 31.) However, because Plaintiffs CEMA claims survive, their CPA claims do as well.

ORDER ON MOTION TO DISMISS (DKT. NO. 10) - 10